SCHEER LAW GROUP, LLP
REILLY D. WILKINSON #250086
JOSHUA L. SCHEER #242722
155 N. Redwood Drive, Suite 100
San Rafael, CA 94903
Telephone: (415) 491-8900
Facsimile: (415) 491-8910
rwilkinson@scheerlawgroup.com

Attorneys for Plaintiffs Van Thi Duong, and Green Lotus Group, LLC, a California limited liability company

UNITED STATES BANKRUPTCY COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Minh Tuong Nguyen,<br><br>Debtor. | Bk. No.: 8:26-bk-10347-SC<br><br>Adv. No.: 8:26-ap-01058-SC<br><br>Chapter 7 |
| Van Thi Duong, and Green Lotus Group, LLC, a California limited liability company,<br><br>Plaintiff.<br><br>vs.<br><br>Minh Tuong Nguyen,<br><br>Defendant. | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [FED. R. CIV. P. 12(b)(6), 9(b); FED. R. BANKR. P. 7012, 7009]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:<br>Date: 10/27/2026<br>Time: 1:30 PM<br>Place: Bankruptcy Court<br>411 W Fourth St. Santa Ana, CA 92701<br>Courtroom 5C |

//

//

//

//

//

//

## TABLE OF CONTENTS

I. INTRODUCTION . …………………………………………………………………………1

II. PROCEDURAL HISTORY AND RELEVANT FACTS…………………….………………2

III. LEGAL STANDART……………………….……………...…………………………..3

IV. ARUGMENT………………………………………………………………………....4

A. Defendant's Argument That the FAC is Unchanged Is False and a Red Herring……4

B. The First Cause of Action states a plausible claim under § 523(a)(2)(A) and is pleaded with particularity…………………………………………………….……5

1. The FAC supplies the "who, what, when, where, and how" the Order required…5

2. There is no impermissible "group pleading" because there is one defendant, and the FAC attributes the fraud to him……………………………………………6

3. The § 523(a)(2)(B) "financial condition" bar does not defeat the claim, because the FAC pleads promissory, use-of-funds, collateral, and scheme-based fraud that § 523(a)(2)(A) reaches without any writing……………………………………7

4. The FAC pleads fraudulent intent, not mere nonperformance……………………8

5. Reliance and causation are adequately pleaded, and Defendant's "pleaded-itself-out" argument raises disputed facts…………………………………………….…9

6. The FAC adequately pleads Defendant's debt……………………………………9

C. The Second Cause of Action states a claim for nondischargeability predicated on financial elder abuse…………………………………………………………………10

D. The Third Cause of Action states a claim under § 523(a)(6) for willful and malicious injury……………………………………………………………………….………..11

E. Dismissal without leave to amend is unwarranted; any remaining defect should be curable by amendment……………………………………………………………13

V. CONCLUSION……………………………………………………………………....14

## TABLE OF AUTHORITIES

**Cases**

*Arace v. Medico Invs., LLC*
48 Cal. App. 5th 977, 262 Cal. Rptr. 3d 341, at 345 (2020)……………………………….10

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1990)………………………………………………..…………..13

*Cohen v. de la Cruz*
523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998)…..………………………10, 11

*Desertrain v. City of Los Angeles*
754 F.3d 1147 (9th Cir. 2014)…………………………………………….…………13

*Does v. United States*
58 F.3d 494 (9th Cir. 1995)………………………………………………………..13

*Foman v. Davis*
371 U.S. 178 (1962)……………………………………………………………..……13

*Husky Int'l Elecs., Inc. v. Ritz*
578 U.S. 355……………………………………………………...……………1, 8

*In re Aarons*
643 B.R. 595 (Bankr. C.D. Cal. 2022)…………………………………………..….3, 4, 9

*In re Aalam*
538 B.R. 812 (Bankr. C.D. Cal. 2015)………………………………………………….8

*In re Anastas*
94 F.3d 1280 (9th Cir. 1996)…………………………………………………………..1, 7

*In re Barrack*
217 B.R. 598 (B.A.P. 9th Cir. 1998)…………………………………………………12

*In re Carlson*
426 B.R. 840 (Bankr. D. Idaho 2010)…………………………………………………5

*In re Curley*
666 B.R. 673 (Bankr. D. Or. 2024)……………………………………..………..11, 12

*In re Hart*
533 B.R. 765. (Bankr. N.D. Cal. 2015)……………………………………..……..8, 10
*In re Mbunda*
484 B.R. 344 (B.A.P. 9th Cir. 2012)……………………………………...……….3, 10
*In re Rubin*
875 F.2d 755 (9th Cir. 1989)…………………………………………….……….8, 9
*In re Young Jin Yoon*
627 B.R. 905 (Bankr. C.D. Cal. 2021)…………………………………………….12
*Jackson v. Carey*
353 F.3d 750 (9th Cir. 2003)………………………………..…………………..13
*Lamar, Archer & Cofrin, Llp* v. Appling
584 U.S. 709, 138 S. Ct. 1752, 201 L. Ed. 2d 102 (2018)……….……………………7
*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2000)…………………………………………………….12
*Lockerby v. Sierra*
535 F.3d 1038, at 1040 (9th Cir. 2008)……………………………………….…….12
*Neubronner v. Milken*
6 F.3d 666 (9th Cir. 1993)…………………………………………………….4, 6, 7
*Northern California Bowling Proprietors' Ass'n*
316 F.2d 787 (9th Cir. 1963)…………………………………………….………..13
*Wehlage v. EmpRes Healthcare, Inc*.
791 F. Supp. 2d 774 (N.D. Cal. 2011)…………………………………………….13

//

//

//

//

//

//

**Statutes, Rules**

11 U.S.C. § 523(a)(6)……………………………………………………….………..1, 11, 12, 13

11 U.S.C. § 523(a)(2)(A)…………………………………………….………..1, 4, 5, 8, 10, 12

11 U.S.C. § 523(a)(2)(B)………………………………………………………………….…7, 12

California Welfare & Institutions Code § 15610.27……………………………………..……2

California Civil Code § 3345…………………………………………………...…………..2

California Welfare & Institutions Code § 15610.30…………………………..…….………..10

Federal Rule of Bankruptcy Procedure 7012………………………………..…….….……..3

Federal Rule of Bankruptcy Procedure 7009………………………………..…….….……..4

Federal Rule of Civil Procedure 12(b)(6)……………………………………………..1, 3, 4

Federal Rule of Civil Procedure 15(a)…………………………………………………..……13

Federal Rule of Civil Procedures 9(b)…………………………………………………...…4

Plaintiffs, Van Thi Duong ("**Van Duong**") and Green Lotus Group, LLC ("**Green Lotus**"), collectively referred to as the "**Plaintiffs**" herein, their successors and/or assignees in interest hereby submit this Opposition to Minh Tuong Nguyen's ("**Defendant**") Motion to Dismiss ("**Motion**") Plaintiffs' First Amended Complaint ("**FAC**"). This Memorandum is based on the pleadings and records on file in this matter and the Plaintiff's underlying bankruptcy proceeding.

**I. INTRODUCTION**

This Court dismissed the original Complaint with leave to amend and told Plaintiffs precisely what to supply: the particular representations and omissions, when and under what circumstances they were made, which Plaintiff relied, how each induced the advances, and facts tying the alleged conduct to reliance, injury, and — for the § 523(a)(6) count — Defendant's subjective intent to injure. The First Amended Complaint ("**FAC**") does exactly that. It identifies seven specific wire transfers, each dated to the day and traced to a recipient, totaling $1,699,670.94; it sets out the specific promises Defendant made to obtain the money and the specific material facts he concealed; it alleges his contemporaneous knowledge that those promises were false and that he had neither the intention nor the ability to repay; and it alleges that he acted with the subjective intent to cause Plaintiffs' loss.

Defendant's motion ignores the pleading actually before the Court. It argues that the FAC is a mechanical "re-filing" of a superseded draft; that every representation Plaintiffs identify is a "statement respecting financial condition" barred for want of a writing; and that the elder-abuse and willful-injury counts add nothing. Each argument fails. The operative question on a Rule 12(b)(6) motion is whether the FAC, taken as true and read in Plaintiffs' favor, states plausible claims — not how it compares to a draft whose sufficiency this Court expressly never decided. It does. And the "no-writing" theory on which Defendant stakes his request for dismissal without leave to amend mistakes the law: promises of future performance, misrepresentations about the use of the loaned funds, representations about collateral, and fraudulent schemes are all actionable under § 523(a)(2)(A) without any writing. *In re Anastas*, 94 F.3d 1280 (9th Cir. 1996); *Husky Int'l Elecs., Inc. v. Ritz* 578 U.S. 355, at 359) The motion should be denied in its entirety.

## II. PROCEDURAL HISTORY AND RELEVANT FACTS

The parties and the scheme.

Van Duong is an individual over the age of 70 and the Managing Member and Principal of Green Lotus. (See FAC at page 3). Van Duong is an "elder" under California Welfare & Institutions Code § 15610.27 and a "senior citizen" under Civil Code § 3345. (Id.) In 2022, she was introduced to Defendant through a longtime acquaintance and real estate agent, Tiffany Nguyen, who invited her to "various Vietnamese Buddhist gatherings … that were set up by Defendant for the purpose of socializing and obtaining funds from unsuspecting investors to pay off bad debt." (Id. at page 4).

The representations and the concealment.

When Defendant solicited Plaintiffs' money, he "expressly promised that he was a borrower who would repay Plaintiffs, that Plaintiffs' money would stabilize or protect Defendant's real properties and thereby preserve Plaintiffs' ability to be repaid, and that Defendant could and would provide meaningful security for the debt if necessary." (See FAC at page 6). Those representations were false when made. (Id.) At the same time, Defendant concealed that his properties were already in default or on the verge of foreclosure; that his debts to his creditor Bench Equity, LLC were cross-collateralized and expensive to cure; that default interest and fees were rapidly increasing; that he lacked unencumbered equity or liquidity to repay; and, critically, that he "intended to use the funds for his own purposes" and to "bail him out by paying other defaulted loans and obligations." (See FAC pages 4 & 6).

The transfers.

Over several months in 2022, in reliance on those representations, Plaintiffs advanced $1,699,670.94 through seven wires: $700,000 on August 30, 2022 to Defendant's entity Jocotal & Rangeview Properties; $247,500 on August 31, 2022 to Defendant; $280,000 on September 23, 2022 to Defendant; $148,000 on October 14, 2022 to Defendant; and, at Defendant's request, to his creditor Bench Equity "to pay other debts owed by Defendant and to avoid collection and/or foreclosure", $115,000 on November 10, 2022, $108,370.94 on November 14, 2022, and $100,000 on December 15, 2022. (See FAC at page 5).

<u>Scienter, reliance, and injury.</u>

Defendant "knew his representations regarding his wealth, creditworthiness, and assets were entirely false," and "knew he had no intention or ability to repay Plaintiffs' loans, as he was already severely defaulting on his existing mortgages." (See FAC at page 7). He intended that Plaintiffs rely so that they "would continue funding Defendant directly and continue paying Defendant's lenders … to protect Defendant's properties and postpone foreclosure." (Id.) Plaintiffs justifiably relied and, but for the deception, "would not have advanced the funds." (Id.) Defendant also referred to Van Duong as "Ma" and used other endearing terms "in order to convince her to voluntarily provide[] funds for his own purposes," targeting a victim he knew was "substantially more vulnerable than other members of the public … because of age or impaired understanding." (See FAC at page 6).

<u>Procedural posture.</u>

Defendant filed his Chapter 7 petition on February 4, 2026. Plaintiffs timely filed the Complaint on May 4, 2026. (See Docket No. 1 filed in Adversary Case No 8:26-ap-01058-SC). On June 4, 2026, Defendant filed a motion to dismiss the adversary complaint ("**1st Motion**"). In response to the 1st Motion, Plaintiff filed an amended complaint on July 14, 2026.

On July 21, 2026, the Court granted Defendant's 1st Motion with leave to amend ("**Order**"), directing that "Plaintiffs may file an amended complaint within twenty-one (21) days of the entry of this Order." (See Order, Docket No. 13 filed in this Adversary Proceeding). Specifically, the Court held that that the amended pleading non-operative and expressly "ma[de] no determination regarding the sufficiency of the allegations contained in [that document]." (Id.) Plaintiffs filed the operative FAC on August 11, 2026, within the 21-day window.

## III. LEGAL STANDARD

On a motion under Rule 12(b)(6) (incorporated by Rule 7012), the Court "must accept all factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff," and the complaint survives if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Aarons*, 643 B.R. 595, at 605 (Bankr. C.D. Cal. 2022). A claim is plausible when the Court can "draw a reasonable inference that the

defendant is liable for [the] misconduct." (Id at 604-605). The facts must "nudge the plaintiff's claims across the line from conceivable to plausible", no more. *In re Mbunda*, 484 B.R. 344, at 357 (B.A.P. 9th Cir. 2012).

Because the § 523(a)(2)(A) claims sound in fraud, Rule 9(b) (incorporated by Rule 7009) requires that the FAC "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *In re Aarons*, 643 B.R. 595, at 605 (Bankr. C.D. Cal. 2022). Rule 9(b) is not, however, a demand for evidentiary proof at the pleading stage. "Malice, intent, knowledge, and other condition of mind of a person may be averred generally," *Neubronner v. Milken*, 6 F.3d 666, at footnote 4 (9th Cir. 1993), and the particularity requirement "may be relaxed with respect to matters within the opposing party's knowledge," because a plaintiff "cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, at 672 (9th Cir. 1993).

Defendant invokes the canon that discharge exceptions are construed against the creditor. That canon is a rule for construing the statute once facts are found; it does not raise the Rule 8 or Rule 9(b) pleading bar, and it does not license the Court to disbelieve well-pleaded allegations or resolve factual disputes on a motion to dismiss.

## IV. ARGUEMENT

### A. Defendant's Argument That the FAC is Unchanged Is False and a Red Herring

Curiously, Defendant's lead argument is that the FAC is not "an amendment at all" but a "re-filing" of the earlier Docket 7 pleading. (See Motion at page 3). This appears to be an attempt to confuse the facts and has no bearing on the Rule 12(b)(6) interpretation. The Court in its Order granting 1st Motion also granted leave "file an amended complaint within twenty-one (21) days of the entry of [the July 21] Order." (See Order at 8). Plaintiffs filed the FAC on August 11, 2026, within that window. It is the operative pleading, and it is properly before the Court.

Defendant's comparison to Docket 7 is misplaced.

*First*, the Court expressly declined to rule on the sufficiency of Docket 7, stating that it

"makes no determination regarding the sufficiency of the allegations contained in [that document]." (See Order at page 8). There is thus no prior adjudication against which "sameness" could matter.

*Second*, the only pleading the Court did adjudicate was the original Complaint, and the correct question is whether the FAC cures the deficiencies the Court identified in that Complaint — a question answered by comparing the FAC to Docket 1, not to Docket 7. On the only comparison that matters, the FAC plainly advances the ball. The Court's own Order recognized that Plaintiffs' amended allegations added detail "concerning … the circumstances surrounding the solicitation of the funds, the individuals allegedly involved, the specific transfers made by Plaintiffs, and … the representations allegedly made concerning repayment and collateral." (See Order at page 3). That is precisely the particularity the Order found wanting in the original Complaint.

**B. The First Cause of Action states a plausible claim under § 523(a)(2)(A) and is pleaded with particularity.**

To except a debt from discharge under § 523(a)(2)(A), a plaintiff must allege (1) a misrepresentation, fraudulent omission, or deceptive conduct by the debtor in obtaining money; (2) the debtor's knowledge of its falsity or deceptiveness; (3) intent to deceive; (4) justifiable reliance; and (5) proximately caused damage. (*In re Carlson*, 426 B.R. 840, at 854 (Bankr. D. Idaho 2010)) The FAC pleads each element with particularity.

*1. <u>The FAC supplies the "who, what, when, where, and how" the Order required.</u>*

**Who**. Defendant Minh Tuong Nguyen made the representations. The FAC attributes the operative promises to Defendant himself: "When Defendant solicited, accepted, and retained the funds provided by Plaintiffs, Defendant expressly promised" that he would repay, that the money would stabilize and protect his properties, and that he "could and would provide meaningful security." (See FAC at page 6). The First Cause of Action likewise alleges that "Defendant knowingly made the following false representations and omissions to Plaintiffs, with the intent to deceive." (See FAC at page 7).

**What**. The FAC identifies the specific affirmative promises (repayment through the sale

of his real property investments; that the funds would stabilize or protect his properties; that he could and would provide meaningful security) and the specific omissions (existing defaults and foreclosure exposure; cross-collateralized Bench Equity debts expensive to cure; rapidly increasing default interest and fees; lack of unencumbered equity or liquidity; and the concealed intended use of the funds to pay his own defaulted creditors). (See FAC at page 7).

**When and where**. The representations were made in 2022, in the course of soliciting the loans at the "Events" Defendant organized, and in connection with the seven wires that followed on identified dates between August 30 and December 15, 2022. (See FAC at page 5). The FAC dates each transfer to the day and identifies each recipient. (Id.)

**How.** Defendant used a relationship of trust, cultivating Van Duong at religious gatherings and addressing her as "Ma" to induce an elder and her company to advance money against promises he had no intention of keeping, while concealing that the money would be used to service his own failing debts. (See FAC at pages 4, 6, & 7).

To the extent any element of the fraud turns on Defendant's state of mind, his knowledge of falsity and intent to deceive, Rule 9(b) permits those matters to "be averred generally," *Neubronner v. Milken*, 6 F.3d 666, at footnote 4 (9th Cir. 1993), and relaxes particularity further because Defendant's own intentions and the true state of his finances were "within [his] knowledge." (Id at 672) The FAC nonetheless supplies a factual basis for its scienter allegations: Defendant was "already severely defaulting on his existing mortgages" when he promised to repay. (See FAC at page 7).

2. *There is no impermissible "group pleading" because there is one defendant, and the FAC attributes the fraud to him.*

Defendant argues that the FAC engages in "group pleading" by alleging that Plaintiffs acted "[a]t the urging of Defendant, along with Ashley, Tiffany and Darren." (See Motion at page 6). The differentiation rule Defendant invokes exists so that, in a multi-defendant case, each defendant is informed of the particular misconduct charged against it. That concern is absent here: Minh Tuong Nguyen is the only defendant, and the FAC repeatedly and specifically attributes the operative representations and omissions to him. (See FAC at pages 6 & at 7). That other individuals also encouraged the investment does not render the allegations against

Defendant ambiguous; he is given full notice of "the particular misconduct which is alleged to constitute the fraud charged" so that he "can defend against the charge." *Neubronner v. Milken*, 6 F.3d 666, at 671 (9th Cir. 1993)

*3. The § 523(a)(2)(B) "financial condition" bar does not defeat the claim, because the FAC pleads promissory, use-of-funds, collateral, and scheme-based fraud that § 523(a)(2)(A) reaches without any writing.*

Defendant's central contention is that "every representation and omission [the FAC] pleads concerns Defendant's own financial condition," so the entire count is barred absent a signed writing under § 523(a)(2)(B). (See Motion at page 7). That argument sweeps far too broadly and, even taken at its best, cannot support dismissal of the count.

**The carve-out is limited to statements of overall financial status**. A statement is one "respecting the debtor's financial condition" only if it has "a direct relation to or impact on the debtor's overall financial status" — the balance-sheet picture of "net worth," "solvency," or whether the debtor is "able to repay a given debt or not." *Lamar, Archer & Cofrin, Llp* v. Appling, 584 U.S. 709 at 720, 138 S. Ct. 1752, 201 L. Ed. 2d 102 (2018). The Supreme Court made clear in the same breath that § 523(a)(2)(A) "still retains significant function," reaching "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation," and "debts resulting from misrepresentations about the value of goods, property, and services." *Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709 at 723, 138 S. Ct. 1752, 201 L. Ed. 2d 102 (2018)

**Promises to repay are not statements of financial condition**. The Ninth Circuit squarely distinguishes a representation of intent to repay, which is actionable under § 523(a)(2)(A), from a representation of ability to repay, which implicates financial condition. *In re Anastas*, 94 F.3d 1280, at 1286 (9th Cir. 1996). Courts "must take care to avoid forming the inquiry under section 523(a)(2)(A) as whether the debtor recklessly represented his financial condition"; "[t]he correct inquiry is whether the debtor … made the representation that he intended to repay the debt." *Id*. Defendant's promises that he "would repay," that the funds would "stabilize or protect" his properties, and that he "could and would provide meaningful

security" (See FAC at page 6) are promissory representations of this kind, not balance-sheet statements.

**Representations about collateral are not statements of financial condition**. This Court's own district has applied the rule: "representations regarding collateral, as opposed to the debtor's overall financial condition, would fall within § 523(a)(2)(A)." *In re Aalam*, 538 B.R. 812, at 822 (Bankr. C.D. Cal. 2015). Defendant's promise of "meaningful security for the debt" (See FAC at page 6) is a representation about collateral, not financial condition.

**Misrepresentation and concealment of the use of funds are not statements of financial condition**. Where a borrower obtains money by misrepresenting how it will be used, and the funds are "never used" as represented, the debt is nondischargeable under § 523(a)(2)(A) and the misuse supports the inference that the money was "never intended to be used" as promised. *In re Hart*, 533 B.R. 765. At 780 (Bankr. N.D. Cal. 2015). The FAC alleges precisely that: Defendant concealed that he "intended to use the funds for his own purposes" and to "bail him out by paying other defaulted loans," and the FAC traces three wires directed to his creditor Bench Equity to do exactly that. (See FAC at pages 4 & 6).

**"Actual fraud" requires no misrepresentation at all**. The FAC also alleges a coordinated scheme to extract funds from an elderly investor. (See FAC at page 4 & 6). "Actual fraud" under § 523(a)(2)(A) "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation," where the wrong lies "in the acts of concealment and hindrance." e not in dishonestly inducing a creditor to extend a debt but in the acts of concealment and hindrance. *Husky Int'l Elecs., Inc. v. Ritz,* 578 U.S. 355, 356, 136 S. Ct. 1581, 1584, 194 L. Ed. 2d 655 (2016). For such frauds, reliance on a misrepresentation is not even an element. (Id.)

*4. <u>The FAC pleads fraudulent intent, not mere nonperformance.</u>*

Defendant argues that nonperformance is not fraud and that the FAC alleges only inability, not an intent not to perform. (See Motion at page 8). However, "a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A). *In re Rubin*, 875 F.2d 755, at 759 (9th Cir. 1989); *In re Aalam*, 538 B.R. 812, at 821 (Bankr. C.D.

Cal. 2015). Intent not to perform is ordinarily inferred from circumstances, and the circumstances here are compelling: Defendant promised repayment and "meaningful security" while "already severely defaulting on his existing mortgages," concealing that the very funds he solicited would be routed to his own foreclosing creditors. (See FAC at pages 6 & 7). The Ninth Circuit found fraudulent intent on materially similar facts: a defendant who approached homeowners facing imminent foreclosure, made false representations to obtain their property, and from whose conduct and experience "a court may infer an intent to deceive." *In re Rubin*, 875 F.2d 755 at 759 (9th Cir. 1989). Whether Defendant in fact lacked the intent to perform is a question of fact that cannot be resolved against Plaintiffs on the pleadings.

*5. Reliance and causation are adequately pleaded, and Defendant's "pleaded-itself-out" argument raises disputed facts.*

Defendant contends that Plaintiffs defeated their own reliance because they directed the later Bench Equity wires and later took collateral. (See Motion at page 8). That is a merits argument about what Plaintiffs knew and when, not a pleading defect. The FAC alleges that Plaintiffs "did in fact justifiably rely," and that "[h]ad Plaintiffs known the true facts … [they] would not have advanced the funds." (See FAC at page 7). Those allegations must be accepted as true and read in Plaintiffs' favor. *In re Aarons*, 643 B.R. 595, at 604 (Bankr. C.D. Cal. 2022). The chronology confirms their plausibility: the first four wires (nearly $1.375 million) were sent between August 30 and October 14, 2022, before any of the Bench Equity payments and before Plaintiffs became "skeptical" in March 2023. (See FAC at page 5). That Plaintiffs continued to perform at Defendant's urging, and later sought collateral when they grew concerned, is consistent with a defrauded lender attempting to protect its position, not an admission that no deception occurred. Any inference to the contrary is one for trial, not a motion to dismiss.

*6. The FAC adequately pleads Defendant's debt.*

Defendant argues that no "debt of Defendant" is pleaded because some funds flowed to entities. (See Motion at page 9). The FAC alleges direct wires to Defendant himself ($247,500, $280,000, and $148,000), a wire to "Defendant's entity," and wires to "Defendant's creditor" to pay "debts owed by Defendant." (See FAC at page 5). In any event, a debtor "need not receive a

benefit" for a debt obtained through his fraud to be nondischargeable. *In re Hart*, 533 B.R. 765 at 778 (Bankr. N.D. Cal. 2015). Once money is "obtained by" the debtor's fraud, "any debt arising therefrom is excepted from discharge," including the debtor's "full liability traceable to" the fraudulently obtained sum. *Cohen v. de la Cruz*, 523 U.S. 213 at 219, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). Whether and to what extent Defendant received the benefit of the funds is a factual question; it is not a basis to dismiss.

**C. The Second Cause of Action states a claim for nondischargeability predicated on financial elder abuse.**

The Second Cause of Action is pleaded under § 523(a)(2)(A) and seeks a determination that the debt arising from Defendant's financial abuse of an elder is nondischargeable. (See FAC at page 9). As it rests on the same fraudulent conduct as the First Cause of Action, conduct that, as shown above, states a claim, it survives for the same reasons.

Defendant is wrong that the count fails because "California's elder abuse statute is not an exception to discharge." (See Motion at page 9). Plaintiffs do not contend that § 15610.30 is itself a discharge exception. They contend that a debt arising from financial elder abuse committed through fraud is nondischargeable under § 523(a)(2)(A). California financial elder abuse occurs when a person takes an elder's property "for a wrongful use or with intent to defraud, or both," or "by undue influence." *In re Mbunda*, 484 B.R. 344, at 358 (B.A.P. 9th Cir. 2012); *Arace v. Medico Invs., LLC*, 48 Cal. App. 5th 977, 262 Cal. Rptr. 3d 341, at 345 (2020). The FAC pleads the intent-to-defraud branch directly: Defendant "committed financial elder abuse by taking … Van Duong's funds for a wrongful use, with fraudulent intent," and "had no intent to repay." (See FAC at page 9). That fraudulent-intent theory maps onto § 523(a)(2)(A), and the resulting debt is nondischargeable.

The FAC also pleads the elder-specific facts the Court directed Plaintiffs to supply: that Defendant "knew or should have known" he was dealing with an elder; that he cultivated false trust by calling Ms. Duong "Ma"; and that she "was substantially more vulnerable than other members of the public … because of age or impaired understanding." (See FAC at page 6; Order at page 5).

Defendant's remaining objection, that treble damages under Civil Code § 3345 are unavailable is a dispute about the measure of recovery, not about whether a claim is stated, and is premature on a motion to dismiss. To the extent the fraud is proven, the nondischargeable debt extends to "all liability arising from [the] fraud," including enhanced damages, attorneys' fees, interest, and costs "traceable to" the abuse. *Cohen v. de la Cruz*, 523 U.S. 213 at 21 & 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998); *In re Curley*, 666 B.R. 673, at 684 (Bankr. D. Or. 2024). Indeed, attorneys' fees under Welfare & Institutions Code § 15657.5(a) are mandatory upon proof of financial abuse. *Arace v. Medico Invs., LLC*, 48 Cal. App. 5th 977, 262 Cal. Rptr. 3d 341, at 344-345 (2020). The scope of recoverable damages can be sorted out later; it is not a ground for dismissal now.

**D. The Third Cause of Action states a claim under § 523(a)(6) for willful and malicious injury.**

The Court dismissed the original § 523(a)(6) claim because it offered only conclusory assertions of "actual intent" and failed to allege that Defendant acted "with the subjective intent to cause the injury" or "with a subjective belief that such injury was substantially certain to occur," and because it did not distinguish willfulness from malice. (See Order at page 6). The FAC cures both defects.

**Willfulness**. The FAC now alleges that "Defendant acted with the subjective, actual intent to cause economic injury to Plaintiffs, or with the subjective knowledge that such severe economic injury was substantially certain to result from his deceptive conduct." (See FAC at page 10). That tracks the governing standard precisely: willfulness requires "a subjective motive to inflict injury or … a belief that injury is substantially certain to result." *In re Curley*, 666 B.R. 673, at 681 (Bankr. D. Or. 2024). The FAC grounds that allegation in fact: Defendant "deliberately used Plaintiffs' funds to cure his own financial arrearages … fully aware that he had no viable means or intention of ensuring the recovery or repayment of Plaintiffs' investment." (See FAC at page 10). A debtor who takes a lender's money intending neither to repay nor to preserve the collateral is "charged with the knowledge of the natural consequences of his actions," and is properly found to have willfully injured the lender. *In re Curley*, 666 B.R. 673, at 682 (Bankr. D. Or. 2024).

**Malice**. Separately, the FAC pleads the four elements of malice: "Defendant's taking and retention of Plaintiffs' funds was an intentional, tortious violation of Plaintiffs' property rights," and he "acted deliberately, wrongfully, and without just cause or excuse." (See FAC at page 10). That satisfies the distinct malice standard: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Young Jin Yoon*, 627 B.R. 905, at 914 (Bankr. C.D. Cal. 2021).

**The claim rests on tortious conduct, not a mere breach.** Defendant argues the count pleads only "an unpaid loan, not a tort." (See Motion at page 10.) However, an intentional breach is nondischargeable under § 523(a)(6) where it "is accompanied by conduct that constitutes a tort under state law." *Lockerby v. Sierra*, 535 F.3d 1038, at 1040 (9th Cir. 2008). Fraud and the intentional, wrongful deprivation of another's property are such torts. The Ninth Circuit BAP recognizes that a creditor may prove nondischargeability where "the breach of contract also constituted a tort such as conversion that the debtor undertook willfully and maliciously." *In re Young Jin Yoon*, 627 B.R. 905, at 914 (Bankr. C.D. Cal. 2021). Courts routinely hold debts arising from fraud, conversion, and financial elder abuse nondischargeable under § 523(a)(6). *In re Curley*, 666 B.R. 673, at 681-682 (Bankr. D. Or. 2024). The FAC alleges Defendant "intentionally, deliberately, and wrongfully induced Plaintiffs into parting with their funds through a coordinated scheme of material misrepresentations, concealments, and false promises" and thereby "intentionally depriv[ed] Plaintiffs of their property." (See FAC at page 10). That is tortious conduct, not simple nonpayment.

**Barrack does not bar the claim**. Defendant's reliance on *In re Barrack* over extends it. The BAP in *In re Barrack*, 217 B.R. 598 (B.A.P. 9th Cir. 1998) expressly refused to hold that §§ 523(a)(2) and (a)(6) are mutually exclusive, calling that reasoning "unnecessarily broad." (Id. at 606). Its narrow holding bars recasting as a § 523(a)(6) claim only a claim "required by the plain language of § 523(a)(2) to be brought exclusively under § 523(a)(2)(B)" that "fails under that section due to the lack of a writing." (Id. at 606). As shown in Part IV.B.3, the FAC's fraud is not confined to written-financial-condition statements; it rests on promissory, use-of-funds, collateral, and scheme-based conduct actionable without a writing. The predicate for *Barrack* is

therefore absent, and the § 523(a)(6) claim, grounded in the independent tort of intentional, fraudulent deprivation of property, stands on its own.

**E. Dismissal without leave to amend is unwarranted; any remaining defect should be curable by amendment.**

Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, at 198 (1962). In addition, the Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, at 1130 (9th Cir. 2000). (quoting *Does v. United States*, 58 F.3d 494, at 497 (9th Cir. 1995); *see also Desertrain v. City of Los Angeles*, 754 F.3d 1147, at 1154 (9th Cir. 2014); *Jackson v. Carey*, 353 F.3d 750, 578 (9th Cir. 2003). "Leave to amend, however, should be granted 'if it appears at all possible that plaintiff can correct the defect.'" *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, at 701 (9th Cir. 1990) (quoting *Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, at 790 (9th Cir. 1963)).

Defendant's contrary arguments fail. He contends the controlling defect is "incurable" because no writing exists. (See Motion at page 11). But as shown, the surviving theories require no writing at all. He also argues the FAC improperly contradicts the original Complaint by deleting an allegation of a writing signed by Defendant and replacing it with the Foothill & Towne instrument. (See Motion at page 12). The rule he invokes forecloses only amendments that "allege facts inconsistent with the challenged pleading." *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774 (N.D. Cal. 2011). The FAC does not contradict the original Complaint; it refines and supplements the collateral allegations, which is the ordinary and permitted use of amendment. And because the fraud is actionable without any writing, the presence or absence of the earlier allegation cannot render amendment futile.

//

//

//

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss the First Amended Complaint in its entirety. In the alternative, if the Court finds any deficiency in the FAC, Plaintiffs request leave to amend.

SCHEER LAW GROUP, LLP

Dated: October 13, 2026

/s/ Reilly D. Wilkinson
#250086

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

85 Argonaut Suite 202, Aliso Viejo, CA 92656

A true and correct copy of the foregoing document entitled (*specify*): Plaintiff's Opposition to Defendant's Motion to Dismiss the First Amended Complaint [FED. R. CIV. P. 12(b)(6), 9(b); FED. R. BANKR. P. 7012, 7009]; Memorandum of Points and Authorities

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/13/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee, ustpregion16.sa.ecf@usdoj.gov; Jeffrey I Golden, lwerner@go2.law; Tinho Mang, tmang@marshackhays.com; Heidi H.L. Griffith, heidi@directionslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/13/2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Defendant/ Debtor: Minh Tuong Nguyen, 840 Chateau Ct. Garden Grove, CA 92841
Debtor's Counsel: Leonard Pena, 1003 Diamond Avenue, Ste 202, South Pasadena, CA 91030
Defendant's counsel: Heidi Griffith, Directions Law, Inc. 9140 Trask Avenue, Suite 100, Garden Grove, CA 92844
Trustee: Jeffrey I Golden, 3070 Bristol Street, Suite 640, Costa Mesa, CA 92626
Trustee's Attorney: Eric P. Israel, 2818 La Cienega Avenue, Los Angeles, CA 90034
Judge: US Bankruptcy Court, Hon. Scott C. Clarkson, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2026 | Kaylie Cornillez | /s/ Kaylie Cornillez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |